## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DAVID FLETTRICH                                CIVIL ACTION

VERSUS                                         NO. 21-1986

CHEVRON ORONITE COMPANY,                       SECTION "B"(2)
L.L.C., ET AL

### ORDER AND REASONS

Before the Court are defendants' notice of removal (Rec. Doc. 1), plaintiff's motion to remand (Rec. Doc. 17), defendants' memorandum in opposition (Rec. Doc. 24), and related contentions about an alleged improper joinder of a nondiverse defendant. For the following reasons,

**IT IS ORDERED** that defendant Jerry Ockmand is dismissed from this litigation because he was improperly joined. Ockmand's previously filed motions to dismiss (Rec. Docs. 14 and 27) are **Dismissed as Moot;** and

**IT IS FURTHER ORDERED** that plaintiff's opposed motion to remand (Rec. Doc. 17) is **DENIED.**

I.   <u>FACTS AND PROCEDURAL HISTORY</u>

Plaintiff David Flettrich ("Plaintiff" or "Flettrich") was employed at Chevron Oronite – Oak Point ("Chevron" or "Defendant"), located in Plaquemines Parish, Louisiana from November 2007 until October 15, 2020. Rec. Doc. 1-3 (Petition for Damages). On the latter date, Chevron allegedly wrongfully terminated plaintiff

based on false accusations made by his co-worker, Jerry Ockmand ("Ockmand"). *Id.*

In March or April 2020, plaintiff and Ockmand's supervisor, Fallon Martin, informed their department that Chevron's maintenance department was being reduced from eight (8) team leaders to six (6). *Id.* During that same time, Chevron's vice-president of Human Resources, Rhonda Morris, informed Chevron employees that the company was actively working to diversify its workforce. *Id.* According to plaintiff, all the employees took that message to mean that "Chevron was in the process of reducing the number of white team leaders like plaintiff and Ockamnd and replacing them with African Americans and other minorities." *Id.*

Sometime after being notified of the departmental cutbacks, Ockmand allegedly filed a false complaint against plaintiff, stating Flettrich used a racial slur – the N-word – while at work. Rec. Doc. 1-3. Ockmand also allegedly forged plaintiff's signature on the complaint. *Id.* Plaintiff asserts Ockmand filed the false complaint because he realized his job was in jeopardy with the pending staff reduction and wanted to secure his position. *Id.* Approximately four months after Ockmand allegedly filed the fraudulent complaint, plaintiff received a phone call from Chevron's Human Resources Department advising him that they would be looking into the complaint's allegations. *Id.*

On October 15, 2020, plaintiff was informed that his employment with Chevron was terminated, and he was escorted off the property. *Id.* On that date, Chevron gave a document entitled "Record of Discussion," which listed Chevron's reason for terminating his employment. Rec. Doc. 1-3. The document stated, "the Company substantiated that on more than one occasion and according to more than one witness [plaintiff] used a racial slur (the N-word) to describe a group of contract workers." *Id.* Chevron's Human Resources department refused to disclose to plaintiff the names of the individuals who accused him of using racial slurs. *Id.* After his termination, Flettrich claims to have suffered severe economic and emotional harm that led him to seek professional medical care from psychiatrist Phuong Nguyen, MD. *Id.*

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging employment discrimination, and received his right to sue letter from the EEOC on June 15, 2021. Rec. Doc. 1-3. On or about October 5, 2021, plaintiff filed a petition for damages in the 25th Judicial District Court for the Parish of Plaquemines, alleging several tort claims and fraud against both Chevron and Ockmand, as well as an additional employment discrimination claim against Chevron. *Id.*

On October 28, 2021, defendants removed the case to federal court, asserting federal question jurisdiction and diversity jurisdiction. Rec. Doc. 1. Defendants asserted the Court had

subject-matter jurisdiction pursuant to § 1331 because plaintiff's well-pleaded complaint included a federal cause of action for race discrimination. However, plaintiff did not specifically allege a federal cause of action, only a state cause of action under the Louisiana Employment Discrimination Statute ("LEDL"). *Id.* Defendants further argued the Court had jurisdiction pursuant to § 1332 because the amount in controversy exceeds the jurisdictional amount, and excluding defendant Ockmand, there is complete diversity between Chevron and Flettrich. *Id.* Defendants argue that Ockmand's status as a Louisiana citizen must be ignored given that he was fraudulently joined to defeat diversity. *Id.* According to defendants, there is no reasonable basis to predict that plaintiff might recover against Ockmand. *Id.* Therefore, Ockmand must be dismissed, and the Court maintain diversity jurisdiction.

On November 24, 2021, plaintiff filed a motion to remand this litigation to state court, arguing this Court lacks subject matter jurisdiction. Rec. Doc. 17. Defendants filed an opposition memorandum on December 14, 2021. Rec. Doc. 24.

## II.  LAW AND ANALYSIS

### A. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002). A defendant may remove a state court action to federal court if the federal court has original jurisdiction over the action. 28

4

U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002). The removing party bears the burden of demonstrating the existence of federal jurisdiction. *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, that "removal statute[s] should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723. Furthermore, remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

Defendants raised both Diversity jurisdiction and Federal Question jurisdiction as the basis for removal.

## B. LACK OF SUBJECT MATTER JURISDICTION

### 1. Federal Question

Under 28 U.S.C. § 1331, a federal court has original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." To determine whether a claim arises under federal law, the court examines the "well pleaded" allegations of the complaint and "ignore[s] potential defenses." *Beneficial Nat'l. Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Pursuant to this rule, "federal jurisdiction exists only when a federal question is presented on the face of

5

the plaintiff's properly pleaded complaint." *Yancy v. Standard Mortg. Corp.*, No. CV 16-16276, 2017 WL 1837806, *2 (E.D. La. May 5, 2017); *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188 (5th Cir.2001) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). A federal question is present "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Yancy*, 2017 WL 1837806 at *2. Furthermore, when a plaintiff has a choice between federal and state law claims, he "may proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove." *Manzella v. United Parcel Serv. Inc.*, No. CIV.A. 02-1800, 2002 WL 31040170 (E.D. La. Sept. 10, 2002); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir.2001). Because a plaintiff is "the master of [his] complaint," the "determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001).

In *Manzella v. United Parcel Serv. Inc.*, this Court held that the plaintiff's petition failed to allege a federal cause of action under Title VII; thereby, remanding the case to state court. No. CIV.A. 02-1800, 2002 WL 31040170 (E.D. La. Sept. 10, 2002). Like the case at bar, plaintiff's petition did not have an express reference to Title VII. *Id.* at *3. Nevertheless, the defendants argued that the petition stated a claim under Title VII because 1)

6

the petition asked for punitive damages, which are available under Title VII but not under the Louisiana Employment Discrimination Law, and 2) the plaintiff filed a Charge with the EEOC and received a Right to Sue letter. *Id.* After review, the Court held that those facts were "insufficient to infer a Title VII cause of action from plaintiffs' petition." *Id.* The Court then went on to explain that those facts present ambiguities and don't explicitly point to plaintiff asserting federal claims. *Id.* The Court also noted that the case law is "replete" with decisions granting remand even when the complaints "contained more substantial references to Title VII than in the instant case." *Manzella*, 2002 WL 31040170 at *3.

By contrast in *Hairston v. Sun Belt Conf. Inc.*, this Court ruled that plaintiff Patrick Hairston's petition properly stated a federal cause of action under Title VII. No. CV 21-2088, 2021 WL 5937165 (E.D. La. Dec. 16, 2021). Distinguishing this case from *Manzella*, the Court reasoned that the facts of this case were different from *Manzella* because here the plaintiff didn't merely state that he filed an EEOC charge and received his right to sue letter. *Id.* at *5-6. Instead, plaintiff went a step further and incorporated his EEOC charge and his right to sue letter into his petition by attaching both documents as exhibits. *Id.* "Because Plaintiff attached the EEOC Charge asserting federal claims to the Complaint, it became a part of his pleading for all purposes." *Id.* at *6. *Hairston*, 2021 WL 5937165 at *6. Accordingly, the Court

found that removal based on federal question jurisdiction was proper. *Id.*

Likewise, in *Davoodi v. Austin Independent School Dist.*, the Fifth Circuit held that removal was proper under similar facts as *Hairston*. 755 F.3d 307 (5th Cir. 2014). Davoodi filed a discrimination suit against his employer in Texas state court. *Id.* at 308. The complaint not only referenced that he filed an EEOC charge, but he also "attached and fully incorporated" that charge to the complaint. *Id.* Davoodi referenced the EEOC charge in the facts section of the complaint, referred to it in describing the retaliation claim, and attached the EEOC charge as an exhibit. *Id.* Because the EEOC charge alleged discrimination under Title VII, that claim became incorporated into his complaint for all purposes. *Id.* at 310; *see also* Fed. R. Civ. Proc. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

In the instant case, the petition contains no express references to Title VII or any other specific federal laws. Like *Manzella*, defendants here cite two facts to support their argument that Flettrich has stated a claim under federal law:(1) the petition's language stating plaintiff is asserting "any other causes of action that are applicable to the facts described herein," and, (2) Flettrich's filing of a charge with the Equal Employment Opportunity Commission ("EEOC") and his receipt of a

8

Right to Sue letter. First and foremost, the Court finds the above cited language to be ambiguous and insufficient to infer a federal cause of action from plaintiffs' petition.

Plaintiff purposefully pled only state law causes of action. The addition of the statement "any other causes of action that are applicable to the facts described herein," could just as easily be read to include other state law claims rather than federal. Defendants argue that the addition of this vague statement opened the door to federal claims. Although this statement *may* be construed to allow the addition of federal claims, on its own the statement is ambiguous, and therefore must be construed against removal. *Manguno*, 276 F.3d at 723.

Second, unlike the plaintiffs in *Davoodi* and *Hairston*, Flettrich did not attach and fully incorporate the EEOC charge into the complaint. While plaintiff referenced the filing of an EEOC charge and receipt of a Right to Sue letter, he did not attach those documents as exhibits or assert a federal claim. *See Coleman Crump v. Baton Rouge City Constables Off.*, No. CV 17-257-JJB-EWD, 2017 WL 4678487 (M.D. La. Sept. 22, 2017), *report and recommendation adopted sub nom. Crump v. Baton Rouge City Constables Off.*, No. CV 17-257-JJB-EWD, 2017 WL 4678223 (M.D. La. Oct. 17, 2017) (rejecting an argument that an EEOC charge raised a federal question when plaintiff did not attach or otherwise attempt to incorporate his charge into the pleadings.). At most,

the mere reference to the EEOC proceedings could arguably be proof in support of the specifically pled state claims.  Without more, such an attachment and incorporation, the fact that plaintiff merely filed an EEOC charge is not enough for the Court to infer plaintiff raised federal causes of action in this case. As a result, removal based on federal question jurisdiction was not proper.

### 2. Diversity Jurisdiction

For diversity jurisdiction to exist, all parties must be completely diverse. *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). This means that "all persons on one side of the controversy be citizens of different states than all persons on the other side." *Id.* (citing *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968)). Importantly, federal courts "must presume that a suit lies outside [its] limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Due to this presumption against federal jurisdiction, the removal statute is to be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Additionally, the Court must "resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" in plaintiff's favor. *Morgan v. Chubb Lloyds Ins. Co. of Tex.*, No. 4:21-CV-00100-P, 2021 WL 2102065, at *1 (N.D. Tex.

May 25, 2021) (Pittman, J.) (quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).

The removal was also based on diversity jurisdiction. It is undisputed that Chevron and plaintiff are diverse. However, Chevron argues the nondiverse defendant Ockmand was improperly joined. Rec. Doc. 24.  According to defendants, there is no reasonable basis for recovery against Ockmand under any theory. *Id.* Plaintiff argues Ockmand was not fraudulently joined because a Louisiana state court might impose liability on him under the facts of this case. Rec. Doc. 17.  Additionally, plaintiff contends that he has properly pled various state causes of action against Ockmand, including claims for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and fraud.

## Ockmand was Improperly Joined and Diversity Jurisdiction Exists

In the seminal case *Cavallini v. State Farm Mut. Auto Ins. Co.*, the Fifth Circuit stated, in pertinent part,

> The burden of proving a fraudulent joinder is a heavy one. The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. Because no one disputes that the Cavallinis and Cunningham are Texas residents, our sole concern is whether there is a possibility that Cavallinis ha[ve] set forth a valid cause of action against Cunningham. We evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested

11

> issues of substantive fact in favor of the plaintiff, and then examine relevant state law and resolve all uncertainties in favor of the non-removing party.

44 F.3d 256, 259 (5th Cir.1995) (quotations omitted); *accord Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999). This Circuit has also endorsed the use of summary judgment type procedures for reviewing fraudulent joinder claims. *See Griggs*, 181 F.3d at 700 ("Thus, while we have frequently cautioned the district courts against pre-trying a case to determine removal jurisdiction, a federal court may consider summary judgment-type evidence such as affidavits and deposition testimony when reviewing a fraudulent joinder claim.")

Having considered plaintiff's petition, exhibit, and affidavit in the light most favorable to him, the Court finds that there is no possibility that Flettrich will be able to proceed against Ockmand under asserted state theories of recovery.

Defamation

Under Louisiana law, "[f]our elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 674 (La. 2006). "In other words, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words

which caused plaintiff damages." *Fitzgerald v. Tucker*, 737 So. 2d 706, 715-16 (La. 1999) (internal quotation omitted). Falsity, malice (or fault), and injury may be presumed if "a plaintiff proves publication of words that are defamatory per se," although this presumption is rebuttable. *Kennedy*, 935 So. 3d at 675.

In *Russell v. Chevron U.S.A., Inc.*, the plaintiff Cathy Russell sued her former employer, Chevron, alleging state law claims for fraud, defamation, detrimental reliance, and intentional infliction of emotional distress. No. CV 18-4157, 2018 WL 4816151 (E.D. La. Oct. 4, 2018). Subsequently, Chevron filed a motion to dismiss all of plaintiff's claims. *Id.* Concerning her defamation claim. Plaintiff alleged that "employees of defendant ... made false, misleading, and defamatory statements to third parties" and other employees about her. *Id.* at *4. These alleged defamatory statements were that plaintiff "acted unprofessionally," "violated company policy," "failed to perform her job duties," "committed a dishonest act," "had a drinking problem," and "lost custody of her son." *Id.* As a result of these alleged defamatory statements, plaintiff claimed she sustained significant damages including mental anguish and emotional distress. *Id.*

After review, the Court ruled to dismiss plaintiff's defamation claim, finding that she failed to sufficiently allege her claim. *Russell*, 2018 WL 4816151 at *4. In her complaint,

plaintiff stated that defendant's employees made the alleged defamatory statements about her to other coworkers "in the course and scope of their employment." *Id.* Given this admission, the Court noted that the claim had to be dismissed to the extent it is based upon allegedly defamatory statements made by one employee of defendant to another. *Id.* The Court also noted that this decision is consistent with other Fifth Circuit and Louisiana court cases finding statements made by employees to their coworkers in the course and scope of their employment cannot form the basis of a defamation claim because such statements are not considered "publicized." *Id.*

Here, Defendants assert that plaintiff's defamation claim must be dismissed because internal corporate communications are not publications. Defendants argue that because plaintiff admitted in his complaint that the alleged intra-corporate communication was within the course and scope of Ockmand's employment, his alleged fraudulent communication to Chevron executives cannot be the basis of plaintiff's defamation claim. Upon review, the court finds that defendants have satisfied their burden of proof on this claim.

Plaintiff's defamation claim against Ockmand fails because he cannot satisfy all the required elements. Specifically, plaintiff has failed to show that the alleged defamatory statement was published to a third-party. Instead, plaintiff has only pled that

14

Ockmand made the alleged false statement to their employer, Chevron. This is a fatal defect because, "[i]n Louisiana, statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons for the purposes of a defamation claim." *Williams v. United Parcel Serv., Inc.*, 757 F. App'x 342, 345 (5th Cir. 2018) (citing *Commercial Union Ins. Co. v. Melikyan*, 424 So.2d 1114, 1115 (La. Ct. App. 1982)).

Furthermore, Flettrich does not dispute that Ockmand's alleged defamatory statement to Chevron was made within the course and scope of his employment. Rather, plaintiff has stated just the opposite in his motion to remand. Rec. Doc. 17 at p. 17 ("These false statements which were made by Ockmand while he was in the course and scope of his employment.") Like the plaintiff in *Russell* who could not properly make out her defamation claim, Flettrich likewise cannot base his claim on the statements Ockmand made to Chevron. Accordingly, plaintiff cannot succeed against Ockmand on this claim.

Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress, or knew

that such distress would be certain or substantially certain to result from his conduct. *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020); *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733 (E.D. La. 2019); *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and ... be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209. Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

Recognition of a cause of action in a workplace setting is "usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *See id.*; *see also Bustamento v. Tucker*, 607 So.2d 532, 538 (La.1992) (explaining that "this has been characterized as a sliding scale approach under which even relatively 'mild' harassment may become tortious if continued over a substantial period of time"). Moreover, cases arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to

16

cause severe emotional distress." *See Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1027 (La.2000).

Here, the Court finds that the allegations in this case, considered in the light most favorable to the plaintiff, simply do not rise to the high level of "extreme and outrageous" conduct, over a sufficient period of time, to constitute a tort under existing Louisiana law. Not only did plaintiff fail to allege a pattern of deliberate, repeated harassment, but he also failed to show that he suffered severe emotional distress. First, the conduct plaintiff complains of did not last weeks, months, or years; instead, plaintiff complains of a single incident. *Compare, e.g., Bustamento*, 607 So.2d at 534 (involving almost daily verbal and sexual harassment, over two-year period); *with Wright v. Otis Eng'g Corp.*, 643 So.2d 484, 487 (La.App. 3d Cir.1994) (involving five years of harassment). Moreover, while plaintiff characterizes the offending conduct as a "fabricated defamatory *per se* statement" Ockmand allegedly made to Chevron executives, the Louisiana Supreme Court has expressly held that liability for intentional infliction of emotional distress "does not extend to mere insults [or] indignities" and that "persons must necessarily be expected to be hardened to ... occasional acts that are definitely inconsiderate and unkind." *See White*, 585 So.2d at 1205.

The alleged conduct at issue if proven is offensive and should be condemned as such.  However, the Fifth Circuit has rejected

claims for intentional infliction of emotional distress for acts that are more offensive than the case at bar. *See Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 323–24 & n.1, 329 (5th Cir. 2008) (affirming the dismissal of an intentional infliction of emotional distress claim under Louisiana law where the plaintiff alleged that her supervisor made racist remarks to her); *Charles v. JetBlue Airways Corp.*, No. 08-40, 2009 WL 273206, at *11–12 (E.D. La. Jan. 26, 2009) (reviewing analogous Fifth Circuit cases and holding that "it is apparent that Plaintiff's allegations that she was the subject of racial slurs from her fellow employees does not amount to the level of 'extreme and outrageous' conduct that can allow Plaintiff to recover for intentional infliction of emotional distress"). Following this line of settled case law, it is apparent that plaintiff's allegation that Ockmand made a fraudulent report about plaintiff's use of a racial slur does not amount to the level of "extreme and outrageous" conduct that can allow recovery for intentional infliction of emotional distress.

Next, plaintiff seeks recovery due to "mental anguish, humiliation, and damage to reputation". However, he failed to elaborate on how his damages qualify as "severe emotional distress." Subsequently, the court granted plaintiff leave to supplement his motion to remand with a certified medical record written by Dr. Phuong Nguyen. The medical record indicates that plaintiff suffered from "feelings of despair, anger, and guilt."

Taking this account in the light most favorable to plaintiff, plaintiff's emotional distress is not shown to be severe. *See Gressett v. Sw. Airlines Co.*, 216 F. Supp. 3d 743 (E.D. La. 2016) ("[r]ecovery on an IIED claim under Louisiana law requires a level of distress beyond a reasonable person's endurance.) *See also Pate v. Pontchartrain Partners, LLC*, No. 13-6366, 2014 WL 5810521, at *4 (E.D. La. Nov. 7, 2014)(holding that humiliation and dismay over employment termination did not meet severity requirement); *Deville v. Robinson*, 132 So.3d 1277, 1281 (La. App. 3 Cir. 2/26/14) (dismissing IIED claim when plaintiff suffered series of anxiety attacks); *Pate v. Pontchartrain Partners, LLC*, No. CIV.A. 13-6366, 2014 WL 5810521, *4 (E.D. La. Nov. 7, 2014)(stating some symptoms of severe emotional distress include "neuroses, psychoses, chronic depression, phobia, and shock.").

The medical report also stated that plaintiff referenced previous thoughts of suicide, but he is reportedly "over that now." That level of distress could possibly satisfy the threshold to qualify as severe. However, because plaintiff has not shown a pattern of deliberate, repeated harassment over a period of time or that Ockmand's alleged act was extreme and outrageous, plaintiff's IIED claim still fails. Additionally, given the alleged tortious conduct occurred in a workplace setting, plaintiff's claim for mental anguish would nevertheless not be actionable under these facts. *See White*, 585 So.2d at 1210

("conflict in a pressure-packed work environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable."); *Johnson v. LaShip, LLC*, No. CV 16-570, 2018 WL 2735486 (E.D. La. June 7, 2018) (same).

Even assuming *arguendo* that plaintiff had properly alleged an IIED cause of action, the claim would still fail because Ockmand's alleged conduct was sufficiently employment related to fall under the doctrine of vicarious liability. The principle of vicarious liability or *respondeat superior* is codified in Louisiana Civil Code article 2320. This article provides that an employer is liable for the tortious acts of its employees that are performed "in the exercise of the functions in which they are employed." La. Civ. Code Ann. art. 2320.  Thus, the two issues for the Court to address is whether: (1) plaintiff properly alleged tortious conduct against the individual defendants; and (2) whether these alleged actions were sufficiently employment-related that vicarious liability should attach. *See Olmeda v. Cameron Int'l Corp.*, 139 F. Supp. 3d 816 (E.D. La. 2015)

The Louisiana Supreme Court has outlined the parameters of the test for vicarious liability as follows:

> While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. The inquiry requires the trier of fact to determine whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the

> employer's business, as compared with conduct motivated
> by purely personal considerations entirely extraneous to
> the employer's interests."

*Russell v. Noullet*, 721 So.2d 868, 871 (La.1998) (quoting *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974)). In *LeBrane*, the Louisiana Supreme Court identified four factors to be considered in determining vicarious liability: (1) whether the tortious act was primarily employment rooted; (2) whether the tortious act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. *LeBrane*, 292 So.2d at 218; *see also Olmeda v. Cameron Int'l Corp.*, 139 F. Supp. 3d 816 (E.D. La. 2015); *Baumeister v. Plunkett*, 673 So.2d 994, 996 (La.1996). It is not necessary that all four *LeBrane* factors be met to find vicarious liability. *See Bates v. Caruso*, 881 So.2d 758, 762 (La.Ct.App.2004).

While the complaint does not mention when and where Ockmand's alleged statements were made, the Court can look to plaintiff's allegations for support that Ockmand's alleged act was sufficiently employment related. Specifically, the fact that plaintiff admitted that Ockmand's alleged act of providing a false statement was done while in the course and scope of his employment supports the conclusion that this claim would fall under vicarious liability. Accordingly, the claim for intentional infliction of

emotional distress is not actionable against Ockmand under the circumstances.

Negligent Infliction of Emotional Distress

The Louisiana Workers' Compensation Act ("LWCA") provides the exclusive remedy for personal injuries caused by an employer's or coworker's negligence when those injuries arise out of and in the course of employment. La. R.S. 23:1031, 1032; *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733 (E.D. La. 2019). As a result, courts have consistently held that negligent infliction of emotional distress claims against employers and their employees are barred by the LWCA's exclusivity provision. *See, e.g., Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 742 (E.D. La. 2019); *Patton v. Jacobs Eng'g Grp., Inc.*, No. 15-123, 2015 WL 3964719, at *3 (M.D. La. June 29, 2015); *Gonzales v. T. Baker Smith, LLC*, No. 13-644, 2014 WL 905281, at *3 (M.D. La. Mar. 7, 2014).

Plaintiff admitted that he is seeking damages resulting from Ockmand's alleged negligent infliction of emotional distress. Plaintiff further asserted that both he and Ockmand were co-workers at Chevron's facility and that the act forming the basis of his negligence claim was done during the course and scope of Ockmand's employment with Chevron. Therefore, plaintiff's claim is barred by

the exclusivity provision of the Louisiana Workers' Compensation Act.

Fraudulent Misrepresentation

Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. The elements of a Louisiana fraud and intentional misrepresentation claim are: 1) a misrepresentation of a material fact; 2) made with intent to deceive; and 3) causing justifiable reliance with resultant injury. *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008); *Russell v. Chevron U.S.A., Inc.*, No. CV 18-4157, 2018 WL 4816151 (E.D. La. Oct. 4, 2018).

Plaintiff's state law fraud claim is subject to Federal Rule of Civil Procedure 9(b), which imposes a heightened pleading requirement. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). Under Rule 9(b), the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009). In other words,

"Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Finally, "although scienter may be 'averred generally,' ... pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting Fed. R. Civ. P. 9(b)).

Flettrich has satisfied the Rule 9(b) pleading standard because he has alleged with particularity the specifics of the fraud Ockmand allegedly perpetrated and explained how he was harmed by the alleged misrepresentation. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) ("Rule 9(b) requires the who, what, when, where, and how to be laid out.") Nonetheless, the claim must still be dismissed given its basis on third-party reliance, which is not legally cognizable under Louisiana law. *See Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 WL 1093687, at *8-9 & n.17 (E.D. La. Mar. 14, 2014) (expressing skepticism that a fraud claim alleging third-party reliance is legally viable under Louisiana law); *Schaumburg v. State Farm Mut. Auto Ins. Co.*, 421 F. App'x 434, 442 (5th Cir.

24

2011) ("Louisiana jurisprudence indicates that the following are the elements of the tort of fraud ... 3. reasonable or justifiable reliance by the plaintiff ...")

In *Wright v. United Parcel Serv., Inc. (Ohio)*, the Western District of Louisiana court dismissed a fraud claim, finding it could not stand because plaintiff did not provide any facts that defendants made misrepresentations to her, which she then reasonably relied on. No. 3:20-CV-00098, 2020 WL 1909973 (W.D. La. Apr. 2, 2020), *report and recommendation adopted*, No. 3:20-CV-0098, 2020 WL 1906843 (W.D. La. Apr. 17, 2020). Likewise, in *R. Christopher Goodwin & Assocs., Inc. v. SEARCH, Inc.*, this Court essentially held there was no right under Louisiana law to bring a fraud claim based on plaintiff's admission that misrepresentations were made to third-parties and not to plaintiff. No. CV 19-11290, 2019 WL 5576834 at *5 (E.D. La. Oct. 29, 2019).

Flettrich does not set forth any facts that Ockmand made fraudulent misrepresentations to him, which in turn caused his reasonable reliance. On the contrary, he alleges that Ockmand "knowingly forged a document and made false, defamatory statements about him [to Chevron] for the purpose of inducing Chevron to terminate [his] employment and secure Ockmand's own position." Rec. Doc. 17 at p. 12. Because plaintiff has not alleged that he

25

was the person who reasonably relied on the misrepresentation, the fraud claim against Ockmand cannot stand.

Accordingly, defendants have established fraudulent joinder and Ockmand is hereby dismissed as a party defendant.[1] Regarding Chevron and Flettrich, there is complete diversity of citizenship between them, and the amount is controversy exceeds the jurisdictional amount. Therefore, this Court has diversity jurisdiction over the state-based claims against that entity.

### C. EXPENSES AND COSTS

Finally, Flettrich asserts that the Court should exercise its discretion to award attorneys' fees and costs because defendants' removal of this case was legally improper. 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, "[t]here is no automatic entitlement to an award of attorney's fees." *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 541–42 (5th Cir. 2012) (quoting *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000) (holding that the "mere determination that removal was improper" does not require a district court to award attorney's fees)). Rather, a court "may award attorney's fees when the removing party lacks an objectively reasonable basis for removal."

---

[1] Currently, there are two pending motions to dismiss before the Court, both filed by defendant Ockmand. *See* Rec. Docs. 14 and 27.  Given Ockmand is now dismissed from this litigation, both motions to dismiss are rendered moot.

26

*Id.* (quoting Howard v. St. Germain, 599 F.3d 455, 457 (5th Cir. 2010) (per curiam) (citations omitted)). Based on the foregoing analysis, the Court concludes there was an objectively reasonable ground to remove this case to federal court. Accordingly, the Court denies Flettrich's request for attorneys' fees and costs.

New Orleans, Louisiana this 3rd day of May, 2022

SENIOR UNITED STATES DISTRICT JUDGE