UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DAVID FLETTRICH**                                           **CIVIL ACTION**

**VERSUS**                                                    **NO. 21-1986**

**CHEVRON ORONITE COMPANY,**                                  **SECTION "B"(2)**
**L.L.C., ET AL**

<u>**ORDER AND REASONS**</u>

Before the Court are plaintiff's Complaint (Rec. Doc. 1-3), defendant Chevron's motion to dismiss (Rec. Doc. 15), plaintiff's Second Amending and Supplemental Complaint ("SAC") (Rec. Doc. 19), plaintiff's opposition to defendant's motion to dismiss (Rec. Doc. 22), and defendant's motion to dismiss plaintiff's SAC (Rec. Doc. 28). For the following reasons,

**IT IS ORDERED** that defendant Chevron's opposed partial motions to dismiss (Rec. Docs. 15 and 28) are **GRANTED**, dismissing plaintiff's claims for intentional infliction of emotional distress, negligent infliction of emotional distress, fraudulent misrepresentation, and defamation. The Court retains jurisdiction over the remaining state-based claims for employment discrimination pursuant to diversity jurisdiction.

**I.    <u>FACTS AND PROCEDURAL HISTORY</u>**

Plaintiff David Flettrich ("Plaintiff" or "Flettrich") was employed at Chevron Oronite – Oak Point ("Chevron" or "Defendant"), located in Plaquemines Parish, Louisiana from November 2007 until October 15, 2020. Rec. Doc. 1-3 (Petition for Damages). On the

latter date, Chevron allegedly wrongfully terminated plaintiff based on false accusations made by his co-worker, Jerry Ockmand ("Ockmand"). *Id.*

In March or April 2020, plaintiff and Ockmand's supervisor, Fallon Martin, informed their department that Chevron's maintenance department was being reduced from eight (8) team leaders to six (6). *Id.* During that same time, Chevron's vice-president of Human Resources, Rhonda Morris, informed Chevron employees that the company was actively working to diversify its workforce. *Id.* According to plaintiff, all the employees took that message to mean that "Chevron was in the process of reducing the number of white team leaders like plaintiff and Ockmand and replacing them with African Americans and other minorities." *Id.*

Sometime after being notified of the departmental cutbacks, Ockmand allegedly filed a false complaint against plaintiff, stating Flettrich used a racial slur – the N-word – while at work. Rec. Doc. 1-3. Ockmand also allegedly forged plaintiff's signature on the complaint. *Id.* Plaintiff asserts Ockmand filed the false complaint because he realized his job was in jeopardy with the pending staff reduction and wanted to secure his position. *Id.* Approximately four months after Ockmand allegedly filed the fraudulent complaint, plaintiff received a phone call from Chevron's Human Resources Department advising him that they would be looking into the complaint's allegations. *Id.*

2

On October 15, 2020, plaintiff was informed that his employment with Chevron was terminated, and he was escorted off the property. *Id.* On that date, Chevron gave a document entitled "Record of Discussion," which listed Chevron's reason for terminating his employment. Rec. Doc. 1-3. The document stated, "the Company substantiated that on more than one occasion and according to more than one witness [plaintiff] used a racial slur (the N-word) to describe a group of contract workers." *Id.* Chevron's Human Resources department refused to disclose to plaintiff the names of the individuals who accused him of using racial slurs. *Id.* After his termination, Flettrich claims to have suffered severe economic and emotional harm that led him to seek professional medical care from psychiatrist Phuong Nguyen, MD. *Id.*

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging employment discrimination, and received his right to sue letter from the EEOC on June 15, 2021. Rec. Doc. 1-3. On or about October 5, 2021, plaintiff filed a petition for damages in the 25th Judicial District Court for the Parish of Plaquemines, alleging several tort claims and fraud against both Chevron and Ockmand, as well as an additional employment discrimination claim against Chevron. *Id.*

On October 28, 2021, defendants removed the case to federal court, asserting federal question jurisdiction and diversity jurisdiction. Rec. Doc. 1. On November 24, 2021, Chevron filed a

3

partial motion to dismiss, arguing that plaintiff failed to adequately assert his claims for intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, and fraudulent misrepresentation. Rec. Doc. 15. Chevron's motion to dismiss did not address plaintiff's race discrimination claim under La. Rev. Stat. Ann. §23:332. On December 10, 2021, plaintiff filed a Second Supplemental and Amended Complaint ("SAC") in response to Chevron's motion. Rec. Doc. 19. Plaintiff also filed an opposition memorandum to Chevron's motion to dismiss on December 13, 2021. Rec. Doc. 22. Thereafter, Chevron filed a renewed motion to dismiss, targeting plaintiff's SAC. Rec. Doc. 28.

## II. LAW AND ANALYSIS

### A. 12(b)(6) Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotes omitted)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the

4

plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, the court is not bound to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002). *A fortiori*, a complaint may be dismissed when it appears "beyond a doubt that plaintiff can prove no set of facts" that would entitle him to prevail. *Twombly*, 550 U.S. at 560-61, 127 S.Ct. 1955; *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 399 (E.D. La. 2016). However, the Fifth Circuit has stated that motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are "viewed with disfavor and [are]...rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009).

**B. Chevron's First Motion to Dismiss is Applicable to Plaintiff's Amended Complaint**

In discerning whether a motion to dismiss is applicable to an amended complaint, the question is whether the amended complaint is so different from the original complaint as to make the motion to dismiss moot. *See In re R.E. Loans, L.L.C.*, 553 Fed. App'x 453, 456 (5th Cir.2014); *Cousin v. St. Tammany Par. Jail*, No. CIV.A. 14-1514, 2015 WL 5017113 (E.D. La. Aug. 19, 2015). A motion to

5

dismiss need not be denied as moot when it attacks the original complaint for deficiencies that persist in the amended complaint.

Flettrich's SAC is not so far removed from his initial complaint as to prevent the court from applying Chevron's first motion to dismiss to the SAC. First, plaintiff's amended complaint does not raise any new causes of action; instead, he merely reasserts may of the same allegations and claims raised in the initial complaint. Second, the deficiencies Chevron raised in its initial motion to dismiss persists in plaintiff's amended complaint. Accordingly, the Court will apply the arguments raised in Chevron's initial and second motion to dismiss to plaintiff's amended complaint. *Rountree v. Dyson*, 892 F.3d 681, 683-84 (5th Cir. 2018) (The court may consider a motion to dismiss "as being addressed to the amended pleading"); *Greene v. DeMoss*, No. 3:20-CV-00578, 2020 WL 7755690 (W.D. La. Dec. 11, 2020), *report and recommendation adopted*, No. 3:20-CV-00578, 2020 WL 7755655 (W.D. La. Dec. 29, 2020) (applying defendants' motions to dismiss to plaintiff's amended complaint although "there [was] no indication that the amended complaint adopted or referenced the earlier pleading.")

**C. Plaintiff's Claims**

1. <u>Defamation</u>

Under Louisiana law, "[f]our elements are necessary to establish a claim for defamation: (1) a false and defamatory

6

statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 674 (La. 2006). "In other words, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Fitzgerald v. Tucker*, 737 So. 2d 706, 715-16 (La. 1999) (internal quotation omitted). Falsity, malice (or fault), and injury may be presumed if "a plaintiff proves publication of words that are defamatory per se," although this presumption is rebuttable. *Kennedy*, 935 So. 3d at 675.

Here, Chevron asserts that plaintiff's defamation claim must be dismissed because internal corporate communications are not publications. Defendant argues that because plaintiff alleged in his complaint that Ockmand made the false allegation within the course and scope of his employment, Ockmand's alleged fraudulent intra-corporate communication to Chevron executives cannot be the basis of Flettrich's defamation claim.

After review, the Court finds that plaintiff's defamation claim against Chevron fails for two distinct reasons. First, plaintiff has failed to provide and cannot provide factual support for the publication element, *i.e.*, that Chevron published an alleged defamatory statement to a third-party. Instead, plaintiff has only pled that Ockmand made an alleged false statement to their

7

employer, Chevron. Plaintiff's SAC does not allege that Chevron made any alleged defamatory statement to any third party.

Second, plaintiff's contention that Chevron is solidarily liable for Ockmand's alleged defamatory statement is without merit. True, "[s]tatements made pursuant to a conspiracy to defame can create solidary liability as to all persons connected in the conspiracy.... [A]n employer and employee are solidarily liable for a defamatory statement by the employee, within the course and scope of his employment, at least when the defamation was authorized or ratified by the employer," however, such is not the case here. *Chauvin v. Nat'l Gypsum Serv. Co.*, No. CV 13-5781, 2015 WL 12564177, *6 (E.D. La. July 16, 2015). Plaintiff has not alleged that Chevron and Ockmand conspired to defame him. Additionally, taking plaintiff's allegations as true, even if Ockmand made a false statement to Chevron's HR department that plaintiff used racial slurs, such a statement would not be defamatory under Louisiana law. *See Williams v. United Parcel Serv., Inc.*, 757 F. App'x 342, 345 (5th Cir. 2018) (citing *Commercial Union Ins. Co. v. Melikyan*, 424 So.2d 1114, 1115 (La. Ct. App. 1982)) ("[i]n Louisiana, statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons for the purposes of a defamation claim.").

Plaintiff contends that Ockmand's statement *is* considered published because Chevron can in no way assert that Ockmand's statement was made in good faith. Rec. Doc. 22. Specifically, Flettrich argues that the only way the intra-corporate communication bar applies is when the alleged defamatory statement is made in good faith. *Id.* In support, plaintiff cites a 2004 decision from the Louisiana Third Circuit of Appeals, stating that "[a]n employer's communication regarding a subject in which it has an interest, or a duty is not considered published when made in good faith." *Id.*; *Atwood v. Grand Casinos of Louisiana, Inc.*, 2004-715 (La. App. 3 Cir. 11/10/04), 887 So. 2d 634, *writ not considered*, 2004-3046 (La. 2/18/05), 896 So. 2d 15.

However, *Atwood* can be distinguished from the case at bar. In *Atwood*, the plaintiff asserted a claim for defamation, and in response the defendant raised the defense of privilege. *Atwood*, 887 So. 2d 634, 638-39. Under Louisiana law, "privilege is a defense to a defamation action." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 681 (La. 2006). After the defense of privilege is asserted, Louisiana courts engage in a two-step process to determine whether a conditional privilege exists. *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2017 WL 6623994, at 4 (E.D. La. Dec. 28, 2017). "First, it must be determined whether the attending circumstances of a communication occasion a qualified privilege." *Id.* The second step of the

9

analysis is a determination of whether the privilege was abused, or the statement was made in good faith. *Id.* Here, no such defense of privilege was ever pled on the part of Chevron. *See Biglane v. Bd. of Comm'rs, Fifth La. Levee Dist.*, 18-100, 18-101, p. 5 (La.App. 3 Cir. 9/26/18), 256 So.3d 1052, 1057, *writ denied*, 18-1767 (La. 1/8/19), 260 So.3d 588 ("An affirmative defense must be specifically pled in the answer.") Plaintiff cannot hold Chevron to a higher standard by basing his argument on Chevron's inability to satisfy a defense that it did not assert. Thus, plaintiff has not and cannot allege a defamation cause of action against Chevron, and this claim is dismissed.[1]

2. <u>Intentional Infliction of Emotional Distress</u>

To state a claim for intentional infliction of emotional distress ("IIED"), plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result from his conduct*. Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020)*; Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733 (E.D. La. 2019); *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's

---

[1] In a different context and while not specifically shown at this time, the alleged falsity of plaintiff's use of an offensive racial slur could arguably raise an issue relative to pretext in the remaining employment action.

conduct must "go beyond all possible bounds of decency, and ... be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209. Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

Recognition of a cause of action in a workplace setting is "usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *See id.*; *see also Bustamento v. Tucker*, 607 So.2d 532, 538 (La.1992) (explaining that "this has been characterized as a sliding scale approach under which even relatively 'mild' harassment may become tortious if continued over a substantial period of time"). Moreover, cases arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress." *See Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1027 (La.2000).

Here, plaintiff's claim for IIED fails for two distinct reasons: (1) plaintiff has not adequately alleged such a claim against Chevron; and (2) Chevron is not liable for the actions of Ockmand. First, plaintiff has not alleged any extreme or outrageous

11

conduct on the part of Chevron, only that the defendant received an "anonymous" complaint against him, investigated the allegations, and fired him. Rec. Doc. 19 pgs. 6-7. Firing an employee after investigating his alleged use of racial slurs is not extreme and outrageous conduct on the part of an employer. *See Dufrene v. Northshore EMS, LLC*, 2021-0685 (La. App. 1 Cir. 12/22/21) ("Although the plaintiff may have been upset and insulted after reading his termination letter, the receipt of this correspondence regarding his employment does not rise to a cause of action for intentional infliction of emotional distress…."); *Kell v. Iberville Bank*, 352 F.Supp.3d 650, 663 (E.D. La. 2018) ("a personnel decision, even if wrong, does not give rise to an intentional infliction of emotional distress claim.")

Additionally, plaintiff has failed to allege a pattern of deliberate, repeated harassment as required for IIED claims arising in a workplace setting. Chevron's alleged act that is the basis of plaintiff's claim did not last weeks, months, or years; instead, plaintiff complains of a single incident, Chevron's termination of his employment. *Compare, e.g.*, *Bustamento*, 607 So.2d at 534 (involving almost daily verbal and sexual harassment, over two-year period); *with Wright v. Otis Eng'g Corp.*, 643 So.2d 484, 487 (La.App. 3d Cir.1994) (involving five years of harassment).

Plaintiff also alleges that Chevron is liable for the actions of its employee, Ockmand. Plaintiff contends that Chevron is liable for Ockmand's tortious act of relaying fraudulent allegations because the act was done during the course and scope of his employment. In essence, plaintiff asserts that because Ockmand is an employee of Chevron, Chevron is jointly liable for IIED. Plaintiff is correct that an employer is liable for the tortious acts of its employees that are performed "in the exercise of the functions in which they are employed." La. Civ. Code Ann. art. 2320 (principle of vicarious liability or *respondeat superior*). However, as the Court has already established in its previously issued Order and Reasons,[2] plaintiff did not properly allege an IIED claim against Ockmand; rather, Ockmand was fraudulently joined, and the Court dismissed him as a party defendant. Accordingly, the claim for intentional infliction of emotional distress falls.

3. Negligent Infliction of Emotional Distress

Claims for negligent infliction of emotional distress ("NEID") are barred as a matter of law by the Louisiana Worker's Compensation Act, which provides the exclusive remedy for any claim of negligence against an employer. La. Rev. Stat. § 23:1032; *Jackson v. Country Club of Louisiana, Inc.*, No. CV 20-452-SDD-EWD,

---

[2] In denying plaintiff's motion to remand, Ockmand was dismissed as an improperly joined party-defendant.

13

2021 WL 261538 (M.D. La. Jan. 26, 2021); *Bertaut v. Folger Coffee Co.*, No. CIVA 06-2437 GTP, 2006 WL 2513175, *3 (E.D. La. Aug. 29, 2006) (Zainey, J.) (dismissing plaintiff's claims against her employer for negligent infliction of emotional distress, failure to train and failure to supervise as they are barred by the Louisiana Workers' Compensation Statute); *Oramous v. Mil. Dep't*, No. CIV.A. 05-3677, 2007 WL 1796194, *9 (E.D. La. June 18, 2007) (Wilkinson, J.) ("Plaintiff's claims of negligent infliction of emotional distress and negligent failure to supervise are barred as a matter of law by the LWCA").

Plaintiff admitted that he is seeking damages resulting from Chevron and Ockmand's alleged negligent infliction of emotional distress. However, every act plaintiff alleges was done during the course and scope of his employment with Chevron. Likewise, the alleged emotional injuries arose out of acts during plaintiff's employment with Chevron. For example, plaintiff alleges Chevron and Ockmand breached alleged duties to not defame him, terminate him on fabricated grounds, destroy his reputation, and deprive him of income. Plaintiff does not complain of any conduct performed outside the workplace in support of his negligence claim. Because plaintiff was an employee of Chevron during the time of these alleged negligent actions, plaintiff's claims are barred under the LWCA. *Hilliard v. Parish*, 991 F. Supp. 2d 769 (E.D. La. 2014) (Milazzo, J.) ("Louisiana courts routinely dismiss negligence

14

claims against employers arising in the course and scope of employment."); *see also Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 742 (E.D. La. 2019).

Plaintiff also asserts in support of the NIED claim that the sued-upon incidents caused him to see a psychiatrist to cope with his emotional distress. However, the LWCA's exclusive remedy is not rendered inapplicable because plaintiff seeks damages for emotional injuries. *See Garcia v. Algiers Charter Sch. Ass'n, Inc.*, No. CV 17-8126, 2018 WL 1234961 (E.D. La. Mar. 9, 2018) (LWCA's "exclusive remedy extends to damages for emotional distress.") Therefore, the negligence claims are barred by the LWCA and must be dismissed.

4. <u>Fraudulent Misrepresentation</u>

Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. The elements of a Louisiana fraud and intentional misrepresentation claim are: 1) a misrepresentation of a material fact; 2) made with intent to deceive; and 3) causing justifiable reliance with resultant injury. *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008); *Russell v. Chevron U.S.A., Inc.*, No. CV 18-4157, 2018 WL 4816151 (E.D. La. Oct. 4, 2018). Fraud claims based on third-party reliance are not legally cognizable under

15

Louisiana law. *See Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 WL 1093687, at *8-9 & n.17 (E.D. La. Mar. 14, 2014) (expressing skepticism that a fraud claim alleging third-party reliance is legally viable under Louisiana law); *Schaumburg v. State Farm Mut. Auto Ins. Co.*, 421 F. App'x 434, 442 (5th Cir. 2011) ("Louisiana jurisprudence indicates that the following are the elements of the tort of fraud ... 3. reasonable or justifiable reliance by **the plaintiff** ...") (emphasis added).

In *Wright v. United Parcel Serv., Inc. (Ohio)*, the Western District of Louisiana court dismissed the plaintiff's fraud claim, finding that such a claim could not stand given plaintiff did not provide any facts that defendants made misrepresentations to her, which she then reasonably relied on. No. 3:20-CV-00098, 2020 WL 1909973 (W.D. La. Apr. 2, 2020), *report and recommendation adopted*, No. 3:20-CV-0098, 2020 WL 1906843 (W.D. La. Apr. 17, 2020); *see also R. Christopher Goodwin & Assocs., Inc. v. SEARCH, Inc.*, No. CV 19-11290, 2019 WL 5576834 at *5 (E.D. La. Oct. 29, 2019). Flettrich does not set forth any facts that Chevron made fraudulent misrepresentations to him, which in turn caused his reasonable reliance. On the contrary, he only alleges that "it was simply wrong for Chevron to rely on Ockmand's fraudulent misrepresentations." Rec. Doc. 22 at p. 12. Because plaintiff has not alleged that he was the person who reasonably relied on the misrepresentation, this fraud claim against Chevron cannot stand.

16

Accordingly, the claims for defamation, fraudulent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress are hereby dismissed.

New Orleans, Louisiana this 3rd day of May, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE