UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID FLETTRICH                                           CIVIL ACTION

VERSUS                                                    NO. 21-1986

CHEVRON ORONITE                                           SECTION "B"(2)
COMPANY, LLC ET AL

ORDER AND REASONS

Before the Court are defendant Chevron Oronite Company LLC's motion for summary judgment (Rec. Doc. 45), plaintiff's opposition to defendant's Rule 56 motion for summary judgment (Rec. Doc. 62), and defendants reply memorandum (Rec. Doc. 69). For the following reasons,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED**.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

David Flettrich ("plaintiff") began working for Chevron Oronite - Oak Point ("Chevron"), in November 2007. Rec. Doc. 19 at 3. Plaintiff worked at Chevron for a total of thirteen years, first as a senior category specialist in the procurement department for eleven years, then as a maintenance team leader for the remaining two years, until his employment was terminated on October 15, 2020. *Id.* at 3, 5. Around March or April 2020, plaintiff and defendant Jerry Ockmand ("Ockmand"), a co-worker in the maintenance department also employed as maintenance team leader, were told by the section head that their department would be reducing the number of maintenance team leaders from eight to six. *See id.* at 5.

1

Sometime shortly after this announcement Ockmand filed a complaint against Flettrich, alleging that he had used a racial slur at work, the n-word, in violation of Chevron's harassment policy which states, "All employees are to conduct themselves in a manner to ensure that they comply with the provisions of the company's policy *which strictly prohibits and does not tolerate harassment based on race. . .*" *Id.* at 6; Rec. Doc. 45-1 at 3 (internal quotations omitted) (emphasis in original) (quoting Rec. Doc. 45-3)). As a result of the complaint, Chevron's Human Resources ("HR"), located in Houston, Texas, opened an investigation led by Employee Relations. *See id.;* Rec. Doc. 45-7 at 1. During the process of the investigation, the Employee Relations representative "interviewed eleven witnesses and the accused and reviewed various documents provided by them." Rec. Doc. 45-7 at 1.

The first instance in which Jeff Trader with employee relations ("ER") investigated was an alleged comment made in October 2019. *See id.*[1] According to Ockmand, "Flettrich came into [his] office and said to him, 'Them scaffold are a bunch of stupid [f-word] [n-word]."[2] *Id.* While no one else was present, Ockmand did tell several co-workers about the incident. *Id.* Specifically, Mike Peco, the head mechanic at the facility, heard about the incident from Ockmand, and

---

[1] However, in his deposition Ockmand stated that ER was mistaken, and the Flettrich made the racial statement around May or June of 2020. *See* Rec. Doc. 62 at 15-16.
[2] In keeping with the decorum of this Court, the alleged words used are omitted; however, they can be found in Rec. Doc. 45-1 at 1.

2

recounted a similar experience with Flettrich from December 2019 or January 2020, Flettrich told Peco, "I should put them reporting to you because you know all the rules. These [n-word] are driving me crazy because they don't record anything." *Id.* at 2. No one except Peco and Flettrich were present for that incident, but Peco did discuss the incident with another co-worker soon thereafter, which was corroborated by the co-worker. *Id.* Plaintiff was not informed about the second allegation made by Peco during the investigation, however it did appear in Trader's report. *See* Rec. Doc. 62 at 17-18; Rec. Doc. 45-7.

Additionally, ER interviewed another employee who stated that two other Black contractors heard Flettrich use the n-word in their presence, specifically stating when referring to a labor crew of all Black workers, "They ain't nothing but a bunch of [n-word]," and "Them [n-word] don't do nothing." Rec. Doc. 45-7 at 2. Also adding that the scaffolding crew heard Flettrich referring to them as the n-word to a White contractor. *Id.* While there were no other allegations of using racial slurs, Flettrich received several other negative comments regarding his behavior. *See id.* at 3.

ER's investigation resulted in the conclusion, "While Mr. Flettrich seemed credible in his *inability to remember* using the N-word in conversation, evidence suggests that he has used it at least twice in conversation with Whites, but outside the presence of Black people, in the last year." *Id.* at 4. Ultimately, ER stated that

3

"Flettrich engaged in misconduct which violated which violated [*sic*] HR Policy 420 - Harassment in the Workplace." *Id.* at 1. After completion of ER's investigation, Chevron's Oak Point Plant Manager consulted with the facility's Maintenance and Reliability Manager and two Human Resources Managers about ER's findings. Rec. Doc. 45-1 at 5. Aided by the Vice President of Sales and Marketing, the group decided to terminate Flettrich's employment, citing in a "Record of Discussion" that "Chevron substantiated on more than one occasion and according to more than one witness [Plaintiff] used a racial slur (the N-word) to a describe [*sic*] a group of contract workers." *Id.* at 6 (internal quotations omitted) (alterations in original).

Plaintiff alleges that shortly after his termination, his vacant position was filled by a Black individual and Hispanic individual. *See* Rec. Doc. 19 at 8; Rec. Doc. 62 at 6, 14, 19. Plaintiff then filed suit against Chevron Oronite Company, L.L.C., Ockmand, and ABC Insurance Company in the 25th Judicial District Court of the Parish of Plaquemines on October 5, 2021. *See* Rec. Doc. 1-3 at 3. Plaintiff claimed, intentional infliction of emotional distress, negligent infliction of emotional distress, fraudulent misrepresentation, defamation, and discrimination under the Louisiana Employment Discrimination Law ("LEDL"). This Court later dismissed all claims against Ockmand, and dismissed all claims except plaintiff's state claim for discrimination under LEDL. *See* Rec. Doc. 31; Rec. Doc. 32; Rec. Doc. 45-1 at 1-2. Defendant filed a motion

4

for summary judgment on November 11, 2022 and set it for submission on December 7, 2022. *See* Rec. Doc. 46.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party, without "making credibility determinations or weighing the evidence." *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

When the movant bears the burden of proof at trial, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial,

the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner*, 476 F.3d at 343 (internal quotations omitted) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

**B. Plaintiff's Louisiana Employment Discrimination Law Claims**

Plaintiff's only remaining claims are brought under the Louisiana Employment Discrimination Law ("LEDL"). Rec. Doc. 45-1 at 1-2. "Claims of racial discrimination in employment, pursuant to . . . the Louisiana Employment Discrimination Law, are governed by the same analysis as that employed for such claims under Title VII." *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) (first citing *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994); and then citing *Motton v. Lockheed Martin Corp.*, 2003-0962 (La. App. 4 Cir. 3/2/05); 900 So.2d 901, 909). Disparate treatment, including racial discrimination cases "are analyzed under the test developed for Title VII plaintiffs in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, 678 (1973)." *See*

6

*LaBove v. Raftery*, 2000-1394, 2000-1423 (La. 11/28/01); 802 So.2d 566, 573. According to *McDonnel Douglas Corp.*, the plaintiff bears the initial burden of proof to establish the prima facie case for racial discrimination. *McDonnel Douglas Corp.*, 411 U.S. at 802. The Fifth Circuit has expanded on the *McDonnel Douglas Corp.* for its specific application to the LEDL, and requires that the plaintiff show "(1) they were members of a protected group; (2) they were qualified for the positions they held; (3) they suffered an adverse employment action, such as termination; and (4) they were replaced by individuals outside the protected class." *See DeCorte*, 497 F.3d at 437 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003)). However, "[a]n employee has not been replaced when his former duties are distributed among other co-workers." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294-95 (5th Cir. 2014)).

If plaintiff can show a prima facie case for discrimination, the burden shifts to defendant "to rebut Plaintiff['s] *prima facie* case by articulating a legitimate, nondiscriminatory reason for his actions." *Id.* Finally, if defendant is successful in its rebuttal, the burden shifts back to the plaintiff "to show [defendant's] proffered reason is a pretext for discrimination," and plaintiff must rebut each of defendant's proffered nondiscriminatory reason. *See id.*; *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "A

7

plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (citations omitted). However, a plaintiff's own assertion of innocence does not create a triable issue of fact as to pretext. *See Jackson v. Cal-Western Packing Corp.*, 602 F.3d 374, 379 (5th Cir. 2010). "In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" *Id.* (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)). "[S]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *Deanes v. N. Miss. State Hosp.*, 543 Fed. App'x 366, 370 (5th Cir. 2013) (internal quotations omitted) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)); *see also Gill v. DIRTT Env't Sol., Inc.*, 790 Fed. App'x 601, 605 n.2 (5th Cir. 2019) ("[I]naccurate statements are not a basis for finding pretext . . . ."); *Alfred v. La. Dep't of Corr.*, 619 Fed. App'x 324, 327 (disputing the accuracy of the employer's belief, rather than the genuineness, does not constitute pretext).

Here, in viewing the facts the light most favorable to the non-movant, plaintiff has not demonstrated a prima facie case for racial discrimination under the LEDL. There is no dispute of the first three

elements that plaintiff (1) is a member of a protected group; (2) he was qualified for his position; and (3) he was terminated. Plaintiff is a 56-year-old White male, defendant makes no allegation that he was not qualified for his job, and plaintiff was terminated. *See* Rec. Doc. 62 at 23. However, plaintiff does not establish that (4) he was replaced by individuals outside his protected class. *See DeCorte*, 497 F.3d at 437 (citing *Manning*, 332 F.3d at 881). The Fifth Circuit has held that "[a]n employee has not been replaced when his former duties are distributed among other co-workers." *Ernst*, 1 F.4th at 339 (quoting *Griffin*, 567 F. App'x at 294-95).

In *Ernst*, plaintiff contended that another employee of another race replaced him in his role. However, the court found that plaintiff's contention failed because the employee did not actually replace plaintiff, instead plaintiff's "duties were divided among other employees within his department," and held that plaintiff did not establish the fourth element of the prima facie for discrimination. *Id.* at 339-40.

Here, while plaintiff contends that he was replaced by individuals outside his protected class, Daniel Johnson, a Black male, and William Sorto, a Hispanic male, his duties were distributed among these employees. *See* Rec. Doc. 62-5 at 3-4. Similar to *Ernst*, plaintiff's responsibilities were distributed among other employees, therefore plaintiff has not established that he was replaced by someone outside his protected class.

9

*Ernst* also establishes that the fourth element is satisfied when plaintiff is treated less favorably than a comparator who is similarly situated. *See Ernst*, 1 F.4th at 339 (citing *Lee v. Kan City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). To do this, plaintiff "must establish that the comparator was treated more favorably than the plaintiff *under nearly identical circumstances*." *Id.* (emphasis added) (internal quotations omitted) (quoting *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 410 (5th Cir. 2016)). "Nearly identical circumstances" occur "when the employees being compared held the same jobs or responsibilities, shared the same supervisor or had their employment status determined by the same person and have essentially comparable violation histories." *Id.* (internal quotations omitted) (quoting *Lee*, 574 F.3d at 260).

However, the plaintiff has not shown that he has received less favorable treatment than a similarly situated comparator in nearly identical circumstances. Plaintiff states that he was treated differently than other similarly situated employees and cites to two separate instances. Rec. Doc. 62 at 14, 23. According to the Declaration of Carlo Damico, Jr., there was an incident around 2018 in which an individual used the n-word over the plant radio during a dispute with a co-worker. *See* Rec. Doc. 62-3 at 3. The offending employee was apparently removed from the plant but later allowed to return as a contract employee. *Id.* However, as defendant correctly points out, there is no evidence that the offending employee is

10

outside of plaintiff's protected class, had the same job or responsibilities, shared the same supervisor, had their employment status determined by the same person, or otherwise had comparable histories. *See* Rec. Doc. 69 at 10-11. Then according to Jeff Trader's notes from his interviews, there was another "refinery where same word was used but in telling a 'joke/story' and they were not terminated," however this does not make the requisite showing of nearly identical circumstances. *See* Rec. Doc. 62-116. No further details were provided about this other incident, and as such it is not comparable. Therefore, plaintiff does not establish the prima facie case for discrimination.

Assuming plaintiff could establish the prima facie case, the burden of proof then shifts to defendant to rebut with a legitimate, nondiscriminatory reason for termination. *See DeCorte*, 497 F.3d at 437. Plaintiff makes no allegation that defendant did not meet this burden, plaintiff only argues that defendant's reason for terminating plaintiff was pretext. Defendant argues that plaintiff was terminated for violating Chevron's harassment policy and substantiates this claim with evidence of an extensive internal investigation. *See* Rec. Doc. 45-1 at 5-6. The burden then shifts again to plaintiff to show that defendant's proffered reason was mere pretext. *See DeCorte*, 497 F.3d at 437. Therefore, plaintiff has the burden to show there is a genuine issue of material fact.

11

Plaintiff does not establish that defendant's proffered reason was mere pretext, or that there is a genuine issue of material fact. Plaintiff predominately argues that Jeff Trader's investigation was inaccurate and in furtherance of a company-wide conspiracy to terminate plaintiff in order to meet diversity goals. *See* Rec. Doc. 19 at 6, 8, 9; Rec. Doc. 62 at 17. The Fifth Circuit has made it clear that "the issue is not the truth or falsity of the allegation," but whether the employer acted on the reasonable belief of the allegation. *See Jackson*, 602 F.3d at 379 (citing *Waggoner*, 987 F.2d at 1165). Therefore, it is immaterial for this analysis whether the allegations against plaintiff were in fact true, the only question for pretext is whether Chevron reasonably believed the allegation and acted in good faith.

It is undisputed that in August of 2020, Ockmand reported that Flettrich allegedly used a racial slur when referring to a group of Black Contractors, to his supervisor Pepper Martin and the Human Resource Business Partner, Matt Yarborough.[3] Rec. Doc. 45-1. Human Resources then referred these allegations to Employee Relations. *Id.* at 4. Jeff Trader with Employee Relations opened an investigation into the allegation. *See id.* His investigation consisted of interviewing several Chevron witnesses to corroborate Ockmand's claims which he detailed in his final report. *See* Rec. Doc. 62-4 at

---

[3] Whereas plaintiff contends that Ockmand stated the incident occurred in May or June of 2020 according to his deposition in November of 2022 (Rec. Doc. 62 at 15-16), defendant contends that the incident occurred around October 2019 (Rec. Doc. 45-1 at 3).

12

1-3. This investigation also led to additional allegations of Flettrich using racial slurs to refer to Black individuals, one instance being corroborated by another employee. Trader noted in his report that Pepper Martin believed that the other employees may have conspired against Flettrich to corroborate Ockmand's claims, but after hearing other comments from Martin, decided to screen him from the investigation process. *See id.* at 2 n.3. Trader concluded that, "While Mr. Flettrich seemed credible in his *inability to remember* using the N-word in conversation, evidence suggests that he has used it at least twice in conversation with Whites, but outside the presence of Black people, in the last year." *Id.* at 4.

This report was then sent to Marla Jasko, the HR Manager at Chevron Oronite Belle Chasse. *Id.* at 1. Then Brett Coole, Chevron's Oak Point Manager, consulted with Caio Santos, the facility's Maintenance and Reliability Manager, Marla Jasko, and Dickson Omungo, Jasko's supervisor, about the Trader's findings. *Id.* at 5. Later, Cooley, Jirong Xiao, the Vice President of Sales and Marketing, along with support from Jasko and Omungo, decided to terminate Flettrich's employment, finding that "on more than one occasion and according to more than one witness [Plaintiff] used a racial slur (the N-word) to a [*sic*] describe a group of contract workers." *Id.* at 5-6 (internal quotations omitted) (alterations in original). Overall, the process that led to plaintiff's ultimate termination was extensive and included personnel across various

13

facilities and offices at different levels, within a reasonable process that fairly and fully considered all material and competing interests.

While plaintiff does not agree with the method or conclusion of the investigation, he fails to show that Cooley and Xiao, with the support of Jasko and Omungo, acted unreasonably and in bad faith. As provided above, the record shows their decision to terminate plaintiff's employment was based on their reasonable belief in employees' allegations against plaintiff and their good faith responses to same. Therefore, plaintiff has not demonstrated pretext.

New Orleans, Louisiana this 18th day of January, 2023

_____
SENIOR UNITED STATES DISTRICT JUDGE